**Joseph L. LOWELL**

v.

**Russell L. WANTZ, d/b/a Schaad Detective Agency and Pennsylvania Security Officers Training Academy, Inc.**

**Civ. A. No. 78–2880.**

United States District Court,
E. D. Pennsylvania.

Jan. 8, 1980.

Richard J. Orloski, Stamberg, Caplan & Calnan, Allentown, Pa., for plaintiff.

Miles H. Shore, Philadelphia, Pa., for Pennsylvania Security Officers.

L. C. Heim, York, Pa., for Wantz.

### MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Joseph E. Lowell (Lowell), formerly an instructor at the defendant Pennsylvania Security Officers Training Academy, Inc. (The Academy), was dismissed from that position allegedly pursuant to a conspiracy between The Academy and defendant Russell L. Wantz, Jr. (Wantz) to prevent Lowell from teaching his course in accordance with Pennsylvania law.[1] Charging violation of his First Amendment rights, Lowell brought suit against Wantz and The Academy pursuant to 42 U.S.C. § 1983. The Academy has moved for summary judgment, arguing that its activities do not constitute state action. Because 42 U.S.C. § 1983 does not authorize relief absent state action,[2] and because the facts of this case do not support a finding of state action, The Academy's motion will be granted.

In *Magill v. Avonworth Baseball Conference*, 516 F.2d 1328, 1330–31 (3d Cir. 1975), the Third Circuit set forth three criteria pursuant to which state action can be imputed to private persons or entities. Lowell invokes two of them, arguing that state action is present in that (1) The Academy is performing a public function and (2) the state has significantly involved itself with The Academy.[3] In *Brenner v. Oswald*, 592 F.2d 174 (3d Cir. 1979), the Third Circuit noted that state action may be found under the "significant involvement" category "either (1) when the state and the entity whose activities were challenged are joint participants in a symbiotic relationship or (2) where the entity is pervasively regulated by the state and a sufficient nexus exists between the state and the challenged activity." 592 F.2d at 179. None of these support a finding of state action in this case.

Lowell argues that The Academy's lethal weapons training program is a public function because the Pennsylvania Lethal Weapons Training Act, 22 P.S. § 41 *et seq.*, requires special training before a person can be licensed to carry a lethal weapon in connection with his business, and because that act authorizes only two types of entities to conduct the requisite training, the state police and private institutions such as The Academy. In essence, Lowell argues

---

**1.** Specifically, Lowell contends that he told his students, as he claims he was required by law, that they could not lawfully carry a lethal weapon in connection with their employment unless they possessed a valid certificate issued by the state police evidencing successful completion of a state-certified training program, that the defendants did not want this information given to particular students at the academy, and that he was dismissed to prevent him from giving that information to those students.

**2.** 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**3.** None of the parties argue applicability of the third test, state enforcement of agreements affecting private parties. *See* 516 F.2d at 1331.

that because the state police conduct the same type of training as does The Academy, The Academy performs a public function. In support of this argument Lowell cites *Parks v. "Mr. Ford"*, 556 F.2d 132 (3d Cir. 1977), in which the Third Circuit applied the public function doctrine to the Pennsylvania garagemen's lien statute and concluded that statutorily authorized retention of a vehicle does not constitute state action while statutorily authorized sale of a vehicle does. The distinction rested upon the proposition that retention is a traditional common law right of suppliers of services, while sale has traditionally been performed exclusively by constables and sheriffs. 556 F.2d at 141. This case is clearly distinguishable from *Parks*, however, because state action was found there where private persons were given powers traditionally reserved to state officials. The operation of a lethal weapons training program can not be characterized as a function traditionally reserved by the state. The supplemental affidavit of Leonard Capuzzi submitted in support of The Academy's motion shows that numerous private institutions provided such instruction prior to the promulgation of the Pennsylvania Lethal Weapons Training Act. Furthermore, the Third Circuit has declined to find state action where a private entity provides free library services, an activity far more "traditionally associated with sovereignty" than lethal weapons training. *Hollenbaugh v. Carnegie Free Library*, 545 F.2d 382 (3d Cir. 1976). Further, the Supreme Court has made it clear that an activity does not constitute a public function merely because the state also engages in that activity, or because that activity is necessitated by a state statute. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Finally, the Supreme Court's recent decision in *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) makes it clear that the public function test is not met unless the activity in question has been "*exclusively* reserved to the State." 436 U.S. at 158, 98 S.Ct. at 1734 (emphasis added). As the uncontradicted supplemental affidavit of Leonard Capuzzi makes clear, lethal weapons training has not been within the exclusive province of the state of Pennsylvania. Thus The Academy's activities can not be viewed as constituting state action pursuant to the public function doctrine.

The "significant involvement-joint participants" analysis of state action is based on *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). This analysis requires a review of the specific facts of each case to determine whether "[t]he State has so far insinuated itself into a position of interdependence . . . that it must be recognized as a joint participant in the challenged activity." 365 U.S. at 725, 81 S.Ct. at 862. Lowell argues that the following constitutes the requisite interdependence:

(1) The Academy is certified by the Pennsylvania State Police;

(2) The Schaad Detective Agency operates as a private detective agency with court approval;

(3) The teachers at the Academy are all certified by the Pennsylvania State Police;

(4) The transfer of ownership of the Academy was subject to State Police control;

(5) The students at the Academy are cleared for entrance to the classes by the Pennsylvania State Police;

(6) The firing range scores of the students are forwarded to the Pennsylvania State Police;

(7) Upon successful completion of the program, the Academy assists the students in getting the certification to carry a lethal weapon as a private security agent;

(8) The classes at the Academy are monitored by State Policemen;

(9) The license of the Academy was once suspended by the Pennsylvania State Police;

(10) The State Police inspect on an annual basis the operation of the Academy; and

(11) Without the Lethal Weapons Training Act, there would be no need for the Academy's lethal weapons program.

I do not believe that these activities render the state and The Academy "joint participants" in lethal weapons training. The state does not participate in The Academy's programs directly; indeed, The Academy is free to offer any curriculum it desires. The activities listed above merely constitute regulation, albeit extensive regulation. However, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment . . . Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so." *Jackson v. Metropolitan Edison Co., supra*, 419 U.S. at 350, 95 S.Ct. at 453, *citing Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176–77, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972) and *Public Utilities Comm'n v. Pollack*, 343 U.S. 451, 462, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). My review of all of the materials submitted in opposition to The Academy's motion fails to disclose any facts which would establish the type of interdependence found in *Burton*. These facts show a lower level of interdependence than found in *Metropolitan Edison*. Thus Lowell has failed to establish state action pursuant to the "significant involvement-joint participants" analysis.

The Third Circuit has specifically differentiated the third test, "significant involvement-nexus", from that discussed above. *See, e. g., Brenner v. Oswald, supra*. Under the nexus test, two requirements must be met: the private entity must be pervasively regulated, and a nexus must exist between the state and the challenged activity. *Id.* at 179. While it is questionable whether the extensive regulation of The Academy can be regarded as "pervasive", that issue is irrelevant because it is clear from the record that there is no nexus between the state and the challenged activity. The challenged activity here is the discharge of plaintiff Lowell. Aside from the requirement that The Academy employ teachers certified by the state police, the state has no involvement in The Academy's hiring and firing practices. Other state involvement is limited to regulation of the subject matter and manner of presentation of the curriculum. Thus, while the state excludes from employment a class of noncertified persons, it does not in any way dictate which persons within the class of certified instructors should or should not be employed by The Academy. For this reason the requisite nexus between the state and the hiring practices of The Academy is not present in this case. *Cf. Moose Lodge No. 107 v. Irvis, supra* (licensing of lodge by Liquor Control Board does not constitute involvement with lodge's racially discriminatory guest policy); *Flagg Brothers, Inc. v. Brooks, supra* (mere acquiescence to challenged activity not enough). Lowell also argues that the nexus test is met by the following breach of a state-imposed duty:

The Academy, as a private institution, was performing the governmental function of preparing students for state certification to carry a lethal weapon as private security guards and was required by law to keep Schaad Detective Agency from participating, directly or indirectly, in the administration of the program. Yet, despite this explicit restriction, the Academy conspired with the Schaad Detective Agency to terminate the plaintiff's employment because Schaad and the Academy wanted persons who were not otherwise qualified to carry weapons on the job.

Plaintiff's Supplemental Brief at 19–20. This does not establish a nexus, however, because the cited activity occurred in violation of, rather than in accordance with, a state statute. As Justice Stevens has stated:

It is only what the State itself has enacted that [plaintiff] may ask the federal court to review in a § 1983 case. If there should be a deviation from the state statute . . . the defect could be remedied by a state court and there would be no occasion for § 1983 relief.

*Flagg Brothers, Inc. v. Brooks, supra*, 436 U.S. at 176, 98 S.Ct. at 1744 (Stevens, J.

dissenting). Indeed, the Supreme Court has stated that "a State is responsible for a discriminatory act of a private party when the State, by its law, has *compelled* the act." *Adickes v. Kress & Co.*, 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970) (emphasis added). Here the state has attempted to do just the opposite. Thus Lowell's argument that The Academy's activities constitute state action under the third test fails as well.

Because the activities of The Academy do not constitute state action under any legally cognizable analysis, and because the statute under which Lowell claims entitlement to relief, 42 U.S.C. § 1983, requires state action as a prerequisite to that relief, The Academy's motion for summary judgment is granted.