COMMUNITY MEDICAL CENTER,
Appellant,

v.

EMERGENCY MEDICAL SERVICES OF
NORTHEASTERN PENNSYLVANIA,
INC.

No. 82–3424.

United States Court of Appeals,
Third Circuit.

Argued March 15, 1983.

Decided July 15, 1983.

John R. O'Brien (argued), Oliver, Price & Rhodes, Scranton, Pa., for appellant.

Robert A. Cecchini (argued), Miller, Cali, Cecchini and Bolock, Scranton, Pa., for appellee.

Before ADAMS, GARTH and VAN DUSEN, Circuit Judges.*

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Community Medical Center (CMC) appeals from the grant of a motion in favor of Emergency Medical Services of Northeastern Pennsylvania (EMSNP), dismissing a complaint for lack of subject matter jurisdiction. CMC's claim is based on alleged deprivations of its due process and equal protection rights under the Fifth and Fourteenth Amendments in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. After an evidentiary hearing, the district court held that CMC had failed to demonstrate the requisite state or federal involvement in the process by which EMSNP designated the Scranton area resource hospital so as to

---

* At oral argument counsel were advised that Judge Garth was not able to be present because of illness. Counsel agreed to proceed before Judge Adams and Van Dusen, and Judge Garth was to consider the argument by means of tape recordings.

establish a claim under 42 U.S.C. § 1983. It also ruled that because the complaint did not allege any class-based, invidiously discriminatory animus, the plaintiff had not stated a cause of action under 42 U.S.C. § 1985.[1] Accordingly, the district court concluded that it lacked subject matter jurisdiction. We affirm.

## I

EMSNP is a Pennsylvania non-profit corporation organized to coordinate emergency health care services in northeastern Pennsylvania. The Pennsylvania Department of Health (the Department) and the U.S. Department of Health and Human Services (H.H.S.) recognize EMSNP as an entity eligible to receive grants and assistance under their respective emergency medical services systems programs. 35 P.S. § 6901 *et seq.;* 42 U.S.C. § 300d *et seq.* The Pennsylvania Secretary of Health has designated EMSNP as " 'the lead agency for emergency medical services development in the Counties of Lackawanna, Luzerne, Pike, Wayne and Wyoming.' " App. at 44.

The dispute in this case arises out of the designation of a resource hospital for the Scranton area in furtherance of the emergency medical service systems programs. Under the programs, a resource hospital has responsibility for the monitoring, evaluation, and triage of sick and injured patients prior to their arrival at regional hospitals. App. at 29. Initially, CMC was named the interim resource hospital. On May 1, 1981, the Board of EMSNP decided to designate CMC as the Level II Trauma Center North. In an apparent effort to dispel fears that any one hospital would be permitted to dominate the emergency medical services program, the Board resolved to request applications for formal designation as Resource Hospital in the Scranton area. Appellee's brief at 5. CMC sought an injunction against EMSNP's allegedly discriminatory treatment of its application, claiming infringement of its civil rights in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. EMSNP responded by filing a motion to dismiss the complaint for lack of subject matter jurisdiction, based primarily on the ground that there is no state action. Following an evidentiary hearing, the district court granted the motion, and CMC appealed.

## II

Both the Fifth and Fourteenth Amendments shield individuals only from government action.[2] To claim the protection of either of these Constitutional provisions, CMC must, therefore, demonstrate that the alleged violations of the due process and equal protection clauses by EMSNP may be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).

Since the time of the *Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), the "state action requirement"[3] has reflected a desire to preserve "individual freedom by limiting the reach of federal law and federal juridical power" and avoid "imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Lugar v. Edmondson Oil Co.,* 102 S.Ct. at 2754. In practice, however, this superficially simple concept has proven extremely difficult to apply,[4] and its composition has tended to

1. CMC does not challenge the determination that it failed to state a cause of action under 42 U.S.C. § 1985.

2. *See* L. Tribe, American Constitutional Law 1147 (1978).

3. Section 1983 requires that the challenged actions be taken "under color of state law." This requirement has been treated as the equivalent of the "state action" element essential under the Fourteenth Amendment. *Lugar v. Ed-*

*mondson Oil Co., Inc.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 n. 7, 90 S.Ct. 1598, 1605 n. 7, 26 L.Ed.2d 142 (1970).

4. Commentators and judges have variously characterized the state action doctrine as "murky waters," *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589, 591 (3d Cir.1979), a "protean concept," *Magill v. Avonworth Baseball Conference,* 516 F.2d 1328, 1331 (3d Cir. 1975) (quoting Lewis, The Meaning of State

alter with changing perceptions of the relative dangers posed by state involvement in the private deprivation of constitutional rights and interference by the courts with individual freedoms.

Perhaps because of the manifold forms of state involvement or acquiescence in private activity, the Supreme Court has thus far not attempted to develop a single standard for ascertaining the existence of state action and has stated explicitly that no such unitary test is possible.[5] Instead, it has adopted a number of approaches depending on the circumstances and has counseled lower courts to investigate carefully the facts of each case.[6] The only approaches arguably relevant to this appeal are the overall interdependence or symbiotic relationship analysis set forth in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the close nexus test of *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), and the public function approach of *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), and *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

The relationship of these various tests to one another remains unclear, since the Supreme Court has not sought to reconcile apparent inconsistencies between the tests; nor has it overruled earlier precedents that

seem unlikely to survive any of the tests that have been propounded more recently. *See Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589, 591 (3d Cir.1979); *Braden v. University of Pittsburgh,* 552 F.2d 948, 956 (3d Cir.1977) (*in banc*). Indeed, both *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed. 534 (1982) and *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the two most current discussions of state action by the Supreme Court, treat all three forms of analysis as viable. However, as Judge Garth noted in dissent in *Braden v. University of Pittsburgh,* 552 F.2d at 971–973, the recent authorities, while not repudiating the *Burton* and public function tests, have severely limited their applicability. Nonetheless, all three remain valid, and we shall thus address in turn their application to each argument advanced by CMC.

CMC contends first that the regulatory and funding framework instituted by the federal and state emergency medical systems acts creates a symbiotic relationship between EMSNP and the Commonwealth and federal governments, analogous to the relationship between the segregated Eagle Restaurant and the Wilmington Parking Authority that established state action in *Burton.* In *Blum v. Yaretsky,* the Supreme Court flatly rejected an argument legally indistinguishable from the argument advanced by CMC.[7] The plaintiffs in *Blum*

---

Action, 60 Colum.L.Rev. 1083, 1085 (1960)), "obdurate," *Braden v. University of Pittsburgh,* 552 F.2d 948, 955 (3d Cir.1977), and "a conceptual disaster area," Black, 'State Action,' Equal Protection, and California's Proposition 14, 81 Harv.L.Rev. 69, 95 (1967).

**5.** "This Court has never attempted the 'impossible task' of formulating an infallible test for determining whether the State ('in any of its manifestations') has become significantly involved in private discriminations." *Reitman v. Mulkey,* 387 U.S. 369, 378, 87 S.Ct. 1627, 1632, 18 L.Ed.2d 830 (1967).

**6.** Only by sifting facts and weighing circumstances can the less than obvious involvement of the state in private conduct be attributed its true significance. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961); *Braden v. University of Pittsburgh,* 552 F.2d 948, 956 (3d Cir.1977);

*Magill v. Avonworth Baseball Conference,* 516 F.2d 1328, 1332 (3d Cir.1977).

**7.** Both *Blum* and *Rendell-Baker* dealt with challenges to the practices of institutions that received at least some funding from non-governmental sources. Thus accepting as true the plaintiff's allegation that EMSNP received only government support, these cases are factually distinguishable. The distinction is, however, without practical or legal significance. The school in *Rendell-Baker* received "virtually all" its income from governmental sources, *Rendell-Baker v. Kohn,* 102 S.Ct. at 2771, and the Court accepted as true the allegation in *Blum* that the government subsidized the capital and operating costs of the nursing homes in that case and paid the medical expenses of more than 90% of their patients. None of these organizations could have operated in their current form without state support.

asserted that the subsidization of operating and capital costs of nursing homes, the payment of medical expenses of more than 90% of the patients in the nursing facilities, and the licensing of the homes by the state, made the state a virtual joint participant with the nursing homes within the meaning of *Burton.* The plaintiffs insisted that, as a result, there was state action in the decisions by the nursing homes to transfer and discharge patients. Speaking for the Court, Justice Rehnquist disagreed:

> Accepting all of these assertions as true, we are nonetheless unable to agree that the State is responsible for the decisions challenged by respondents. As we have previously held, privately owned enterprises providing services that the State would not necessarily provide, even though they are extensively regulated, do not fall within the ambit of *Burton.*

*Blum v. Yaretsky,* 102 S.Ct. at 2789. In *Rendell-Baker v. Kohn,* the Supreme Court again refused to entertain a similar argument. The plaintiffs insisted that under *Burton* state funding and regulation of a private school for maladjusted high school students was enough to constitute state action. Chief Justice Burger distinguished *Burton* from *Rendell-Baker* on the facts. In the former, the state profited financially from the discrimination, while in the latter it did not.

> Here the school's fiscal relationship with the State is not different from that of many contractors performing services for the government. No symbiotic relationship such as existed in *Burton* exists here.

*Rendell-Baker v. Kohn,* 102 S.Ct. at 2772. From these cases, it is enough to note that, whatever is required, it is more than the financial support and the regulatory framework found in the present dispute.

CMC also claims that, even if the *Burton* criteria are not satisfied, there is a sufficiently close nexus between the state and the resource hospital designation process to establish state action. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. at 353, 95 S.Ct. at 454. Unlike the symbiotic relationship test, which looks at the overall rela-

tionship among the parties, the close nexus approach attempts to determine whether the state can be deemed responsible for the *specific* conduct of which the plaintiff complains. *Blum v. Yaretsky,* 102 S.Ct. at 2786.

Both *Blum* and *Rendell-Baker* are explicit that this responsibility cannot be inferred from the private party's participation in public contracts or from the fact that the private party is heavily regulated. *Blum v. Yaretsky,* 102 S.Ct. at 2789, *Rendell-Baker v. Kohn,* 102 S.Ct. at 2771. Even "indirect involvement" in the challenged decisions is not enough. Chief Justice Burger, in explaining the *Blum* decision, acknowledged that the state encouraged nursing homes, dependent on the state for financial support, to transfer patients to less expensive facilities, but then noted that this action did not satisfy the close nexus requirement. *Rendell-Baker v. Kohn,* 102 S.Ct. at 2771. Here the only evidence of state concern with the process of designating resource hospitals is the kind of general funding and regulatory framework found insufficient to establish state action in *Blum* and *Rendell-Baker.* In fact, the district court has found that "the selection process for such position was not controlled or even influenced" by the state or federal governments. App. at 38. If indirect involvement is not enough to show the requisite state action, then certainly mere indifference and acquiescence cannot suffice. *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 164–65, 98 S.Ct. 1729, 1737–1738, 56 L.Ed.2d 185, *Jackson v. Metropolitan Edison Co.,* 419 U.S. at 357, 95 S.Ct. at 456.

CMC's final contention is that there is state action in this case because EMSNP is performing a public function. Public function analysis traditionally has been applied in three different situations. First, as in *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), it has been used when the government, after carrying out a particular function, in that case the maintenance of a park, attempts to avoid its constitutional obligations by transferring the function to a private entity. See also *Chalfant v. Wilmington Institute,* 574 F.2d 739,

740 (3d Cir.1978) (*in banc*). Second, courts have employed the public function analysis to the exercise of those powers, such as the supervision of public elections, that are almost invariably exercised by government. *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932). Third, the public function approach has been applied in the First Amendment context to determine whether private property was functionally equivalent to a town, *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), or a business district, *Hudgens v. N.L.R.B.,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972); *Amalgamated Food Employees Local 590 v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). *See also PruneYard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (applying the public function test in the context of a large shopping center to speech and expression rights protected by the California Constitution). This proceeding, as CMC appears to acknowledge, falls into none of the foregoing categories. There is no evidence in the record that Congress or the Pennsylvania legislature utilized non-profit corporations like EMSNP in the Emergency Medical Systems programs to avoid Constitutional obligations. Furthermore, the kind of promotional, coordinating activities present here has never been " 'traditionally the exclusive prerogative of the State.' " *Blum v. Yaretsky,* 102 S.Ct. at 2789 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. at 353, 95 S.Ct. at 455). The First Amendment cases obviously are not applicable to CMC's due process and equal protection claims.

■ We are urged by CMC to recognize a fourth category of public function situations, those in which the private entity's activities are "strictly public." According to CMC, these strictly public cases differ from those found not to contain the requisite state action like *Blum* and *Rendell-Baker,* because they involve no special relationship between the service provider and a private individual. CMC treats as disposi-

tive the fact that *Blum* deals with nursing home care, *Rendell-Baker* with schooling, and *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1982), with the services of a public defender, while here EMSNP provides only coordinating, managerial services. Nothing in the decisions of the Supreme Court indicates, however, that the proffered distinction is legally relevant. We decline to muddy any further public function analysis by concluding that activities, not traditionally the exclusive prerogative of the state, become public merely because they serve society in general rather than specific individuals.

### III

■ Because CMC has failed to establish the requisite element of state action in the process followed by EMSNP in designating the resource hospital for the Scranton area, an essential predicate to a complaint grounded on section 1983, the judgment of the district court dismissing the complaint will be affirmed.