**Stuart B. THORN, Plaintiff,**

v.

**COUNTY OF MONROE, Pleasant Valley Manor, Inc., Bruce Moorehead, individually and as Administrator of Pleasant Valley Manor, Inc., Dr. James G. Kitchen, II., Claude E. Heller, Neil F. Ruddy, Dorothy Kaufman, individually and as members of the Board of Directors of Pleasant Valley Manor, Inc., and their agents and successors in office, Nancy Shukaitis, Thomas Joyce, Jesse Pierson, individually and in their official capacities as Commissioners of the County of Monroe and as members of the Board of Directors of Pleasant Valley Manor, Inc., and their agents and successors in office, and Ducat, Inc., Defendants.**

Civ. No. 82–0951.

United States District Court,
M.D. Pennsylvania,
Scranton Division.

Feb. 10, 1984.

Joseph Rattman, David W. Stokem, Stroudsburg, Pa., for plaintiff; Thomas B. Harvey, American Civil Liberties Foundation of Penna., Philadelphia, Pa., of counsel.

Richard E. Deetz, Stroudsburg, Pa., John S. Hayes, Edward H. Feege, Larry Rappaport, Allentown, Pa., for Pleasant Valley Manor, Inc.

John E. Freund, Allentown, Pa., for defendants Ducat, Inc. and Bruce Moorehead, Individually.

Robert H. Nothstein, Stroudsburg, Pa., for defendants Monroe County and Monroe County Com'rs.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### I

On February 10, 1982, Plaintiff Stuart B. Thorn's (Thorn) employment as a licensed practical nurse with Defendant Pleasant Valley Manor, Inc. (Pleasant Valley) was terminated. Thereafter, on August 5, 1982, he began this action against Pleasant Valley and the other named Defendants seeking, *inter alia*, reinstatement with lost benefits, compensatory and punitive damages, and a declaration that his dismissal violated his rights secured under Pennsylvania law and the First and Fourteenth Amendments to the Constitution of the United States. Thorn cites as authorization for this action 42 U.S.C. §§ 1983, 1988,[1] and 28 U.S.C. §§ 2201, 2202.[2] He invokes our jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.[3] The various Defendants, through their respective counsel, filed motions for summary judgment.[4] The motions were properly opposed with briefs, and we have also had the benefit of oral argument. The matter is now ripe for our decision. After much careful consideration, we conclude that, under the law of our Circuit, we must grant Defendants' motions.[5] Our reasons for so doing follow.

1. 42 U.S.C. § 1983 reads, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1988 allows the Court to include reasonable attorney's fees as part of any award of costs to a prevailing party in a civil rights case.

2. 28 U.S.C. § 2201 reads, in pertinent part:
In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2202 provides:
Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

3. 28 U.S.C. § 1331, as amended, reads:
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1343 confers on the district courts original jurisdiction:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

4. The first motion, filed in July, 1983, is on behalf of Defendants Pleasant Valley, Dr. James Kitchen, Claude Heller, Neil Ruddy, Dorothy Kaufman, Nancy Shukaitis, Thomas Joyce, Jesse Pierson, and Bruce Moorehead. Moorehead was, and is, the administrator at Pleasant Valley Manor. The other individuals constitute the Board of Directors for the institution.
The second motion, on behalf of Defendant Ducat, Inc., was filed in August, 1983.
The third motion, on behalf of Monroe County and Defendants Shukaitis, Joyce and Pierson, in their capacity as Commissioners of Monroe County, was entered on September 29, 1983. The interrelationship of these Defendants among themselves and with the Plaintiff is further explained *infra*.

5. Although the last motion to be filed, by Defendants Monroe County and its Commissioners, did not have a supporting brief, Plaintiff briefed his opposition to it. In any event, we are not precluded from entering summary judgment in favor of the county. *See U.S. v. Cless,* 150 F.Supp. 687 (M.D.Pa.1957) *aff'd* 254 F.2d

## II

Prior to our discussion, however, we will set forth the standards governing our review. The instant motions are filed pursuant to Fed.R.Civ.P. 56.

> Summary judgment may only be granted if, upon a review of the materials properly before the court, *see* Fed.R.Civ.P. 56(c), and viewing the evidence thus considered in a light most favorable to the non-moving party, the court is convinced that no genuine issue of material fact remains for trial and that movant is entitled to judgment as a matter of law. *Scott v. Plante,* 532 F.2d 939, 945 (3d Cir.1976).

*Lang v. New York Life Insurance Co.,* 721 F.2d 118, 119 (3d Cir.1983). We may consider not only the pleadings, but also any depositions, interrogatory answers, admissions and any affidavits on file, Fed.R. Civ.P. 56(c), but only in a light most favorable to Plaintiff Thorn, since he is the non-moving party.

## III

Thorn's primary theory underlying this cause of action is that his civil rights were violated in contravention of 42 U.S.C. § 1983. As such, we must make an initial determination whether "the alleged infringement is 'fairly attributable to the state?'" *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1980); *Jackson v. Temple University of the Commonwealth System of Higher Education,* 721 F.2d 931 (3d Cir.1983). The requirement under § 1983 that the acts complained of be performed "under color of" state law is the same thing as the "state action" prerequisite for actions under the Fourteenth Amendment. *U.S. v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966). In short, we must first review the facts adduced thus far, and then determine whether state ac-

590 (3d Cir.1958); *Plouse v. Richardson,* 334 F.Supp. 1086 (W.D.Pa.1971); *Jackson v. Hammock,* 330 F.Supp. 1124, 1125 (E.D.Pa.1971).

tion is present in the acts of the Defendants.

### A.

Plaintiff Thorn was a licensed practical nurse at the Pleasant Valley Manor Nursing Home (the Home) from January 30, 1980 until his termination. Complaint, ¶ 10. For many years, the home had been a county nursing home under the direct ownership and control of Defendant Monroe County (the County). Prior to the time Stuart Thorn worked at the home, the County conveyed its interest in the home to the Monroe County Industrial Development Authority, which in turn sold the home to Pleasant Valley. Complaint, ¶¶ 10–13. Pleasant Valley is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania. Complaint, ¶ 5. Defendants Kitchen, Heller, Ruddy, Kaufman, Shukaitis, Joyce and Pierson constitute the Board of Directors of Pleasant Valley (the Board).[6] The Board is responsible for the formulation of policy for Pleasant Valley. Complaint, ¶¶ 7–8; Answer of Pleasant Valley, ¶¶ 7–8. Defendants Shukaitis, Joyce and Pierson are also Monroe County Commissioners. The County Commissioners have sole approval power over changes in the Articles of Incorporation and By-laws of Defendant Pleasant Valley. Complaint, ¶ 15, Answer of Pleasant Valley, ¶ 15. The County also subsidizes the reasonable operating deficits of Pleasant Valley. Exhibit A to Affidavit of Defendant Bruce Moorehead. The County Commissioners have sole appointive powers over the memberships of the boards of directors of both Pleasant Valley and the Monroe County Industrial Development Authority. Complaint, ¶ 14, Answer of Pleasant Valley, ¶ 14. Defendant Pleasant Valley receives funding from both the Commonwealth of Pennsylvania and the County. Complaint ¶ 22, Answer of Pleasant Valley ¶ 22, Exhibit A to Affidavit of Moorehead.

6. *See* n. 4, *supra.*

Defendant Ducat, Inc. is a health care management corporation. Complaint ¶ 9, Answer of Ducat, Inc. ¶ 9. On June 6, 1981, Ducat, Inc. entered into an agreement with Pleasant Valley. Exhibit B to Affidavit of Moorehead. The agreement states that Ducat, Inc. was to provide Pleasant Valley with "management and consulting services." The agreement expressly characterizes Ducat, Inc. as an independent contractor. Exhibit B to Affidavit of Moorehead, ¶ 1. Ducat, Inc.'s obligations under the agreement include proposing and recommending operating and management policies and procedures, preparing and presenting budgets, including capital expenditures, all subject to the approval of Pleasant Valley. In turn, Pleasant Valley is to compensate Ducat, Inc. and provide all necessary operational funds. Exhibit B to Affidavit of Moorehead, ¶¶ 4–5. Specific obligations of Ducat, Inc. include, *inter alia*, provision, at Ducat Inc.'s expense, of a qualified administrator "to supervise and manage the day-to-day operations of the (home)", subject to the approval of Pleasant Valley. Another obligation of Ducat, Inc. is to "propose and recommend for approval of (Pleasant Valley), salaries and personnel policies." All hiring and firing is to be conducted by Ducat, Inc., subject to approval by Pleasant Valley. Defendant Moorehead is an employee of Ducat, Inc. and not Pleasant Valley. Exhibit B to Moorehead Affidavit ¶ 6(c).

A Declaration of Intent was executed on August 1, 1975 by the County Commissioners on behalf of the County. Exhibit A to Affidavit of Moorehead. That declaration, as noted *supra*, evidenced the County's intent to subsidize the reasonable operating deficits of Pleasant Valley. Further review of that declaration reveals an intention of the County to remove itself from any responsibility as an entity for the operation of the home. Additionally, the Declaration of Service Commitment executed by Pleasant Valley, also contained in Exhibit A, contains similar language evincing the County's relinquishment of control over the home. Exhibit A to Affidavit of Moorehead. We thus have the County conveying

the home to the Industrial Development Authority, which in turn sold the home to Pleasant Valley, which contracts with Ducat, Inc. to, *inter alia*, manage the day-to-day operations of the home, which (Ducat) employs Bruce Moorehead as administrator.

## B. PLEASANT VALLEY'S MOTION

The motion filed on behalf of Pleasant Valley and its individual directors raises essentially five (5) arguments: (1) that Pleasant Valley is not a person acting under color of state law, i.e., that there is no state action present; (2) that Thorn's conduct and speech are not protected by the First and Fourteenth Amendments; (3) that the individual Defendants are not liable in their individual capacities under § 1983; (4) that Thorn was not entitled to any due process protections because he had not been denied a property interest; and (5) even if liability is found, the Defendants cannot be liable for punitive damages. Because we do not find any state action present, we need not address Thorn's remaining claims. Taking the submissions in a light most favorable to the Plaintiff, we find no material fact issues on this state action claim. The Defendants are thus entitled to judgment in their favor. *Lang v. New York Life Ins. Co.*, 721 F.2d at 119.

Thorn alleges in his Complaint that a "symbiotic relationship" exists between Pleasant Valley and the County. Complaint, ¶ 25. This allegation is evidently included to substantiate the state action claims. We take it, then, that Thorn advocates our state action determination be made by reference to the test enunciated in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 724–25, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961). In *Burton*, the test which emerged required a conclusion as to whether the state and the private actor involved in the acts complained of enjoyed a "symbiotic relationship". *Id.* This is but one of several tests prescribed by the Supreme Court over the years to detect the existence of state action in a given set of facts. State action itself is an elusive concept, primarily because of its insusceptibili-

ty to black-letter definition. Yet, despite the seeming frustration and perplexity with which courts and commentators alike often view the subject, *see Community Medical Center v. Emergency Medical Services of Northeastern Pa.*, 712 F.2d 878, 879–880, n. 4, 5 (3d Cir.1983), we are still beneficiaries of substantial recent precedent in this area.

As noted, the symbiotic relationship test is but one method for determining the presence of state action. "Perhaps because of the manifold forms of state involvement or acquiescence in private activity, the Supreme Court has thus far not attempted to develop a single standard for ascertaining the existence of state action and has stated explicitly that no such unitary test is possible." *Community Medical Center*, 712 F.2d at 880 (footnote omitted). Several tests are used, the utility of each depending greatly on the facts of each particular case. "Only by sifting facts and weighing circumstances can the less than obvious involvement of the state in private conduct be attributed its true significance." *Burton, supra* at 722, 81 S.Ct. at 860.

In addition to the "symbiotic relationship" test, there is also the test set forth in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) which focuses on "[W]hether there is a sufficiently close nexus between the state and the challenged action ... so that the action of the latter may be fairly treated as that of the state itself." 419 U.S. at 351 (citation omitted). There exists also an analysis of the private party's actions to see whether or not that party, in acting as it did, was performing a public function. *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed.

1152 (1953); *see also Community Medical Center*, 712 F.2d at 880.

A potential conundrum surfaces in determining which test to use in the state action analyses.[7] Indeed, there exists in the minds of many serious questions as to the homogeneity and viability of these various tests. *See, e.g. Community Medical Center, Id.* More particularly, the Supreme Court recently limited the applicability of *Burton* in *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) and *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *see Community Medical Center, id.* Under any of the tests, however, our conclusions do not differ.

■ "(This) lawsuit, therefore, seeks to hold state officials liable for the actions of private parties ..." *Blum v. Yaretsky*, 457 U.S. at 1003, 102 S.Ct. at 2785. Thorn's claim, essentially, centers around the initial firing by a private party, Bruce Moorehead. It is undisputed that Moorehead was employed by Ducat, Inc., also a private concern. But Thorn's claim also goes further, in that he asserts that the State participated in the decision to fire him in several respects. Thorn asserts that Pleasant Valley is almost totally dependent upon the County and the Commonwealth for operating funds. He also claims that the Commonwealth and the County extensively regulate Pleasant Valley. Further, he contends that the County Commissioners have sole appointive power over the members of the Board of Directors of Pleasant Valley, in addition to serving on the Board itself. In their capacity as Board Members, they have responsibilities which were referred to *supra* and contained in the agreement between Pleasant Valley and Ducat, Inc. These points of relationship,[8] seemingly in particular the

---

7. One court recently made reference to two additional tests for detection of state action. *See Thompson v. Community Action of Greater Wilmington*, 567 F.Supp. 1159, 1162 (D.Del.1983).

8. There are a number of references in Plaintiff's case thus far to the period before 1975, i.e., the time during which Pleasant Valley was admittedly a county nursing home. Although instruc-

tive, we do not find them dispositive. Indeed, we note that while they evidence the County's prior involvement, they could as easily be viewed as evidence of the County's desire to get out of the business of running the nursing home. In any event, they are not references to the time frame covered by the subject matter of this complaint.

presence of the County Commissioners on the Board of Pleasant Valley, constitute the foundation upon which Thorn rests his state action theory. We find them insufficient to establish state action.

■ Looking at the overall relationship of the parties, *Burton v. Wilmington Parking Authority, supra,* we find nothing telling of a symbiotic relationship between the County and Pleasant Valley. Pervasive and detailed regulation by the State is not enough to cloak a business with the authority of the State. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 462, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). Nor will substantial Government funding convert private action to state action. *Jackson v. Metropolitan Edison,* 419 U.S. at 357–58, 95 S.Ct. at 456–57; *see also Blum* at 1011, 102 S.Ct. at 2789.

The only other arguably significant connection between Pleasant Valley and the County is the presence of the County Commissioners on Pleasant Valley's Board of Directors (the Board). Thorn relies heavily on our Circuit Court's decision in *Hollenbaugh v. Carnegie Free Library of Connellsville, Pennsylvania,* 545 F.2d 382 (3d Cir.1976) and the Eighth Circuit's decision in *McVarish v. Mid-Nebraska Community Mental Health Center,* 696 F.2d 69 (8th Cir.1982), in support of his contention that, in conjunction with his other allegations, the presence of the County Commissioners on the Board is tantamount to state action. In *McVarish,* the court was confronted with a statutorily-created Mental Health Center which, together with its Board of Trustees, provided service to and on behalf of a twelve-county area. *McVarish,* 696 F.2d at 70. "We have here, then, a governing board appointed by governmental units specifically for the purpose of allowing the participating governments to supervise and allocate resources efficiently." *McVarish,* 696 F.2d at 71. Of the seventeen board members in that case, twelve were either

actual, or appointees of, commissioners. *Id.* The court found that government was "substantially involved in the 'management or control' of the Center. *Ibid.* Moreover, the plaintiff in *McVarish* was an employee of the Center. *Id.* at 70.

*Hollenbaugh* involved the dismissal of two community library employees. *Hollenbaugh,* 545 F.2d at 382. Noting the three general groupings into one of which all state action claims generally find themselves,[9] the Third Circuit focused its inquiry onto whether there was "significant" state involvement in the action of the community library. *Id.* at 383. The court followed both *Jackson* ("whether there is a sufficiently close nexus between the State and the challenged action ... so that the action of the latter may be fairly treated as that of the State itself") and *Burton* ("whether the State has so far insinuated itself into a position of interdependence with [the library] that it must be recognized as a joint participant in the challenged activity." *Ibid.* The Court then proceeded to examine the particulars of the library. The library was heavily financed by local municipalities, school districts, and the Commonwealth. 545 F.2d at 384. At the time of Plaintiffs' discharge, eleven out of twenty-four trustees were appointees of local governmental bodies. Two governmental bodies had, by resolution, agreed to assist in the maintenance of the library. There was also an agreement that the library would accept designation "as agent to act for and on behalf of the said school district and of the said city to provide public library service to the residents...." *Ibid.* Additionally, the city had authorized a tax specifically for the library's support. *Id.* at 385. The court found both the state and library interdependent. *Ibid.* It therefore saw no need to reach the question as to whether or not the state was involved in the specific challenged activity. *Ibid.*

We find several critical differences in the case at bar which lead us to conclude that

---

**9.** Judge Aldisert found three categories of state action cases: (1) where state courts enforced an agreement affecting private parties; (2) where the state "significantly" involved itself with the private party; and (3) where there was private performance of a government function. In the instant matter our focus is the same as the Circuit Court's.

*McVarish* and *Hollenbaugh* are not altogether apposite here. First, the plaintiffs in both those cases were terminated directly by the governing boards of the defendant entities. Thorn was terminated by Moorehead, an employee of Ducat, Inc. Thus, the decision to terminate him did not come directly from the Board, it came from the administrator of the home. Second, the involvement of the governmental elements in *McVarish* and *Hollenbaugh* was much more visible and direct *viz a viz* the management and control of their respective institutions. The Center in *McVarish* was created by statute, and that statute required minimal government representation expressly for managerial purposes. 696 F.2d at 71. Also, the library in *Hollenbaugh* expressly agreed to act as an agent for the city, and there was a specific tax levied for its support. 545 F.2d at 385.

■ Such direct involvement by the County in the affairs of Pleasant Valley is not apparent here. By agreement, Ducat, Inc. was charged with the responsibility of formulating policy for the home. This was, of course, subject to the Board's approval. Moorehead was responsible for overseeing the day-to-day operation of the home. He was an employee of Ducat, Inc., not Pleasant Valley. And, notwithstanding the Commissioners' presence on the Board, Pleasant Valley was a separate, private entity. We are unable to find, in light of all this, an interdependent relationship between the County and Pleasant Valley. We must therefore look to see if the County actively participated in the conduct complained of. *Burton, supra.*

We find that it did not. The decision to terminate Thorn was made by an administrator, namely, Moorehead. He is responsible for the act about which Thorn complains, not the County. There is no suggestion that the employment termination decision was encouraged or actively coerced by even Pleasant Valley, let alone the County. *See Flagg Bros. Inc. v.*

*Brooks,* 436 U.S. 149, 166, 98 S.Ct. 1729, 1738, 56 L.Ed.2d 185 (1978) and *Jackson v. Metropolitan Edison Co., supra.* Pleasant Valley, through the Board, simply refused to "take any action regarding (Thorn's) dismissal." Exhibit A to Complaint; Complaint, ¶ 41. The decision to fire came from an administrator, a private party; that Pleasant Valley in effect responded to Thorn's "appeal" by refusing to act does not make it *responsible* for that decision. *Blum v. Yaretsky,* 457 U.S. at 1005, 102 S.Ct. at 2786. "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum,* 457 U.S. 1004–1005, 102 S.Ct. 2786. "[O]nly when (the State) has exercised coercive power or has provided such significant encouragement, either overt or covert, (then) the choice must in law be deemed to be that of the State." *Id.* (citations omitted); *see also Rendell-Baker v. Kohn,* 457 U.S. 830, 840, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982). Thus, we conclude that the passive inaction of the Board in declining to act on Moorehead's decision to terminate Thorn is insufficient to enable us to say that Thorn's firing is "fairly attributable to the State." *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), *Rendell-Baker,* 457 U.S. at 839–40, 102 S.Ct. at 2771.

We reach the same conclusion under both the "close nexus" test of *Jackson v. Metropolitan Edison Co., supra,* and the "public function" analysis enunciated in *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) and *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953).[10] Despite the difference in nomenclature, the nexus test of Jackson is, for practical purposes, not too unlike the symbiotic relationship test. Our review of all the factors in this case reveals no "close nexus" between the County and the acts complained of. Nor can we say with any

---

**10.** As noted above, Thorn seems only to be proceeding under the "symbiotic relationship" theory. Because he is the non-moving party, however, we have employed the other two tests as well in an effort to view the facts most favorably toward him.

certitude that the operation of Pleasant Valley is "traditionally the exclusive prerogative of the (County)." *Blum, Rendell-Baker,* and *Jackson, supra.* We mentioned earlier the documents evidencing the County's intent to relinquish control over the operation of the home. Exhibit A to Affidavit of Moorehead. There was also submitted a letter from the Commonwealth Department of Public Welfare describing the home as a private entity, and telling the County exactly what should be done in order for it to be considered the "provider" for the home. *See* Exhibit C to Affidavit of Moorehead. The conclusion in that letter was that the home was not a facility operated by a county government or part of a county institution district under definition of Pennsylvania law. Although we do not consider that letter dispositive, we do find it instructive.

■ To sum up, then, we do not find a symbiotic relationship between the County and Pleasant Valley. Although there is some governmental connection it is not enough for us to say that the actions of Pleasant Valley may be fairly attributable to the State. Additionally, we find the County significantly removed from the specific acts complained of here. Thorn was fired by Moorehead, a private party acting on behalf of his employer, Ducat, Inc., another private party. Pleasant Valley's refusal to act on Thorn's termination, even if it were considered to be a state actor, is not the active participation and/or encouragement the case law requires for a finding of State action. *Blum, supra.*[11] Shortly, there is no State action on the part of Pleasant Valley for purposes of § 1983 and the Fourteenth Amendment.

## C. DEFENDANT DUCAT, INC.'S MOTION

■ Because we found no state action on behalf of Pleasant Valley, the same conclu-

sion *a fortiori* applies to Ducat, Inc., for several reasons. First, it, too, is a private actor, hence the analysis used in Pleasant Valley's motion is the same. Second, Ducat, Inc. is one step more removed from the County than Pleasant Valley. Third, Ducat, Inc.'s agreement was with Pleasant Valley, not the County. Accordingly, we find far less, if any, connections between the County and Ducat, Inc. than there were between the County and Pleasant Valley. If we do not find any state action on behalf of Pleasant Valley, then we certainly cannot find any on behalf of Ducat, Inc. It's motion will therefore be granted.

## D. THE COUNTY OF MONROE'S MOTION

■ The County did not file a brief in support of its motion, and under our local rules, the motion should be deemed withdrawn. M.D.Pa. Local Rule 401.5. Nonetheless, as noted above, we are not precluded from granting summary judgment in its favor. *See* n. 5, *supra.* We base our conclusion that the County is entitled to judgment on the corrollary of our ruling on the other defense motions. Since we do not find state action on behalf of Pleasant Valley and Ducat, Inc. *viz a viz* each other and the County, we cannot find County involvement in the activity complained of enough to satisfy § 1983 and the Fourteenth Amendment. If Pleasant Valley and Ducat, Inc. are not joint participants with the County, then the County cannot be a joint participant with them in Thorn's dismissal. Judgment will therefore be entered in favor of the County.

## IV.

There is no state action present in the actions of the Defendants in deciding to terminate Stuart Thorn. We express no opinion as to why Thorn was fired. We

---

**11.** Thorn also relies on our Circuit's decision in *Chalfant v. Wilmington Institute,* 574 F.2d 739 (3d Cir.1978). For the same reasons by which we determined that *Hollenbaugh v. Carnegie Free Library, supra,* was inapposite here, we conclude likewise for *Chalfant.* Indeed, the

*Chalfant* court commented several times on the indistinguishability of *Hollenbaugh. Chalfant,* 574 F.2d, 744–45. The library in *Chalfant, inter alia,* also was party to an agreement that it would act as an agent for the government.

only conclude that the requisite government involvement was lacking, thus precluding consideration of his First and Fourteenth Amendment and § 1983 claims by this Court. *Rendell-Baker v. Kohn,* 457 U.S. 837–38, 102 S.Ct. 2769–70 (1982). Since we have no jurisdiction to review those claims, there is no longer any pendent jurisdiction over the State law claims. We therefore exercise our discretion and decline to entertain Thorn's remaining claims. Thus, the following Order is entered.

### ORDER

AND NOW, this 10th day of February, 1984, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1. Summary judgment is entered in favor of the Defendants and against Plaintiff Stuart Thorn.

2. The Clerk of this Court is directed to close this case.