Onoufrious Spyros GOUSSIS, M.D., Plaintiff,

v.

Harry R. KIMBALL, M.D., John J. Norcini, Jr., PH.D., and The American Board of Internal Medicine, Defendants.

No. 92–CV–3420.

United States District Court, E.D. Pennsylvania.

Feb. 18, 1993.

Marvin Ellin, Karen M. Raymond, Ellin & Baker, Baltimore, MD, for plaintiff.

Richard L. Strouse, Robert M. Boote, James H. Bocchinfuso, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for defendants.

## MEMORANDUM

ROBRENO, District Judge.

### I. *Introduction*

Plaintiff is a foreign born and trained physician. This case arises out of Plaintiff's failure to pass on four separate occasions the American Board of Internal Medicine's ("ABIM") qualifying examination for the medical subspecialty certification of endocrinology and metabolism.

Plaintiff claims that Defendants invidiously discriminated against him because of his foreign birth and foreign medical training, resulting in the deprivation of Plaintiff's property without due process and equal protection. The factual core of Plaintiff's claim is that the examinations which Plaintiff took and failed were prepared and graded by Defendants with the intent to minimize the scores obtained by foreign medical graduates, including Plaintiff. Its legal essence is that Defendants' conduct was undertaken under color of law.

Defendants have filed a motion to dismiss or, in the alternative, for summary judgment.[1] For the reasons set forth below, I will grant the motion for summary judgment.

---

**1.** Because the affidavit of John J. Norcini Jr., Ph.D ("Norcini Affidavit") is considered by the court in ruling on the motion, the court will treat the motion as one for summary judgment. Fed.R.Civ.P. 12(b)(6).

354

## II. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party need not produce evidence to disprove the opponent's claim but does carry the burden to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2725, pp. 93–95 (1983)). In turn, the non-moving party must offer specific·facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). The non-moving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). If there are no genuine issues as to material facts, the court must then determine whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

2. The personal background facts about Plaintiff are drawn from the complaint and are not contested by Defendants for purposes of the instant motion.

3. The facts relating to the ABIM's structure and functions are drawn from the Norcini Affidavit submitted by Defendants. Since Plaintiff did not provide any affidavit in opposition to the motion for summary judgment, I treat the Norcini Affidavit as uncontested and rely on the facts set forth therein for the granting of summary judgment. *Patel v. American Board of Psychiatry and Neurology, Inc.*, No. 89–C–1751,

## III. *Discussion*

### A. Background

Plaintiff Onoufrious Spyros Goussis, M.D., ("Plaintiff") was born in Corfu, Greece, on April 4, 1948.[2] He attended undergraduate school and medical school at the University of Athens, receiving his medical degree in 1972. From 1972 to 1975, he pursued a residency at King Paul Hospital, in Athens, Greece. Plaintiff came to the United States on a student visa on January 30, 1975. He completed his first year residency in internal medicine at Union Memorial Hospital in Baltimore, Maryland in 1976, his second year residency at West Virginia University Medical School in 1977, and his third year residency at the Cooper Medical Center, Camden, New Jersey, in 1979.

After completion of his residency in internal medicine, Plaintiff undertook a two year fellowship in endocrinology at the University Hospital, Jacksonville, Florida. Subsequent to the completion of that fellowship, Plaintiff completed a one year fellowship in endocrinology at the University of California, Los Angeles School of Medicine. In 1983, Plaintiff entered into the private practice of endocrinology in the Long Island, New York area. Plaintiff also taught medical resident students and medical students at the Nassau County Medical Center. Since that time, he has continued to pursue research and writing in the endocrinology area, contributing to or publishing a number of papers as senior author.

The ABIM[3] is a private educational and scientific non-profit corporation[4] dedicated

1989 WL 152816 (N.D.Ill. Nov. 21, 1989) (granting summary judgment after consideration of defendant's uncontroverted affidavit in a section 1983 case alleging discrimination on the basis of national origin).

4. Norcini Aff. ¶ 1. Defendants assert that the ABIM is qualified as a charity under section 501(c)(3) of the Internal Revenue Code. *Id.* The ABIM is not a branch or agent of any federal, state, or local government body, is not licensed or regulated in its activities by any government body, and does not receive any government funding, subsidies or aid. (Norcini

to the advancement of excellence in the field of internal medicine and the subspecialties of internal medicine. Its board of directors is composed of approximately thirty-five physicians who practice in the field of internal medicine and who have backgrounds in education, research and private practice.

Defendants Harry R. Kimball, M.D. and John J. Norcini Jr., Ph.D. are President and Vice President for Evaluation and Research of the ABIM, respectively.

The ABIM does not grant or participate in the medical licensing process in any state. (Norcini Aff. ¶ 4). It provides, however, for "certification" in the field of internal medicine and the subspecialties of internal medicine. "Certification ... demonstrates recognition of the achievement of successful completion of a number of years of training in internal medicine and the demonstration of medical knowledge and clinical judgment." (Norcini Aff. ¶ 3). Certification by the ABIM is not a prerequisite to the practice of medicine in any recognized medical field. (Norcini Aff. ¶ 6). In September of 1983, Plaintiff sat for and passed the ABIM certification examination and was certified by the ABIM as a specialist in internal medicine.

The certification process for the internal medicine subspecialty of endocrinology and metabolism, the one at issue in this case, requires in addition to board certification in internal medicine, that the applicant: (a) hold a license to practice medicine; (b) satisfactorily complete a period of training which meets the ABIM's standards; (c) achieve a satisfactory score on an objective written examination; and (d) obtain a verification from the director of the candidate's fellowship program that the candidate possess the clinical skills required to practice

examination. (Norcini Aff. ¶ 9). This examination consists of a one day written examination divided into two half-day sessions of multiple choice questions. The ABIM prepares, administers, and grades the subspecialty examination. (Norcini Aff. ¶¶ 11–20).

In November 1985, Plaintiff sat for but did not pass the ABIM's subspecialty certification examination in endocrinology and metabolism. In November 1987, November 1989, and November 1991, Plaintiff again sat for the subspecialty certification examination with the same result.[5] The circumstances surrounding Plaintiff's failure to pass these examinations give rise to this dispute.

### B. Summary Judgment Will Be Granted On All Counts

Plaintiff brings this action against ABIM, Kimball, and Norcini for alleged violations of the Fourteenth Amendment, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 42 U.S.C. § 1986.

### 1. *Judgment Against Plaintiff Will be Entered on Count III Alleging a Violation of 42 U.S.C. § 1983.*

The cornerstone of Plaintiff's claim is that Defendants' conduct violated section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. "To recover under section 1983, a plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived a person of rights, privileges and immunities secured by the Constitution." *Bougher v. University of Pittsburgh*, 882 F.2d 74, 78 (3d Cir.1989). Because on this record, Plaintiff has not shown that Defendants acted under color

Aff. ¶ 5). The ABIM has no member appointed or designated by a public official. *Id.*

**5.** Defendants argue that any action based upon the 1985, 1987 and 1989 test results is barred by the statute of limitations. *Knoll v. Springfield Township School District,* 763 F.2d 584, 585 (3d Cir.1982) (two year Pennsylvania statute of limitations for personal injury actions, 42 Pa.Cons. Stat.Ann. § 5524 (1968 & Supp.1992), governs section 1983 actions). However, Plaintiff's section 1983 cause of action would not have ac-

crued until the Plaintiff "knew or had reason to know of the injury that constitute[d] the basis of [the] action." *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982). The question of when Plaintiff's claim accrued presents an issue of material fact. Fed.R.Civ.P. 56(e). Therefore, for purposes of deciding this action for summary judgment, the court will assume that Plaintiff's claim accrued within the applicable period under the statute of limitations.

of law, it is not necessary to reach the issue of whether Plaintiff has a federally protected right to board certification in a medically recognized subspecialty.

■ What is now section 1983 was enacted by Congress as part of the Civil Rights Act of 1871 to provide an enforcement mechanism for and protection of the rights guaranteed under the Fourteenth Amendment.[6] *Thompson v. State of N.Y.,* 487 F.Supp. 212, 218–21 (N.D.N.Y.1979). Because the "[Fourteenth] Amendment erects no shield against merely private conduct, however ·discriminatory or wrongful[,]" *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948), to prevail Plaintiff must show that ABIM and its two senior officers are "state actor[s] and that [their] conduct was state action." *Johnson v. Educational Testing Service,* 754 F.2d 20, 23 (1st Cir.), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985). State action is shown if (1) "the deprivation [was] caused by the exercise of some right or privilege created by the State or by rule of conduct imposed by the State or by a person for whom the State is responsible" and (2) "the party charged with the deprivation [was] a person who may fairly be said . to be a state actor." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). Since ABIM and the individual defendants are private parties it is the latter which is at issue in this case. *Id.* at 937–39, 102 S.Ct. at 2754–55 (in cases involving private actors, it is the later prong of the test which is implicated); *see also National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988) (under section 1983, liability attaches to those wrongdoers "who carry a badge of authority of a State and represent it in some capacity") (quoting *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961)).

Plaintiff's literal allegations that Defendants are state actors and that their conduct constitutes state action are:

> that state legislatures, including New York and Pennsylvania, have delegated to the Defendants a portion of the State's [sic] police power, the power to license physicians, which the Defendants exercise by performing those acts [administering the qualifying examination] which are the subject of this action.

Complaint ¶ 36(a).

Plaintiff claims that ABIM is a state actor because the ABIM's subspecialty certification examination is a prerequisite to "hospital staff privileges" and "professorship appointments at state medical schools." Therefore, by allegedly controlling who passes or fails the subspecialty certification examination, ABIM performs a regulatory function that is "traditionally the exclusive prerogative of the state." *Plaintiff Goussis' Memorandum of Law in Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment,* at 5. Plaintiff argues that states like New York do not themselves administer subspecialty certification examinations, and that by not "restrict[ing] the use of the [subspecialty certification] exam[inations,]" these states have "... adopted the ABIM'S exam as [their] own, thereby delegating [their] authority to regulate physician competency to the ABIM." *Id.* at 6.

■ No single mode of analysis is applicable to determine the presence of state action in section 1983 cases. *Krynicky v. Univ. of Pittsburgh,* 742 F.2d 94, 98 (3d Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985); *see also Reitman v. Mulkey,* 387 U.S. 369, 378, 87 S.Ct. 1627, 1633, 18 L.Ed.2d 830 (1967) (no "infallible test" is available for all factual situations). At least three relevant approaches are suggested by Supreme Court jurisprudence.[7] The "close nexus" test de-

---

**6.** The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty or property, without due process of law...." *U.S. Const.* amend. XIV, § 1.

**7.** Two other tests are the "state compulsion" test, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and the "joint action" test. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

termines whether the state can be deemed responsible for the specific conduct of which the plaintiff complains, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); the "symbiotic relationship" approach examines the overall relationship among the parties to determine whether or not the state has "insinuated itself into a position of interdependence with [the acting party]" sufficiently to be recognized as a joint participant in the challenged activity, *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961); and the "public function" test[8] inquires into whether the government is using the private party to avoid constitutional obligations or to engage in activities that were the exclusive prerogative of the state. *Rendell–Baker v. Kohn*, 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982); *Evans v. Newton*, 382 U.S. 296, 301, 86 S.Ct. 486, 489–90, 15 L.Ed.2d 373 (1966).

At times, more than one test may be relevant, e.g., *Imperiale v. Hahnemann University*, 776 F.Supp. 189 (E.D.Pa.1991) (applying the symbiotic relationship and close nexus tests to a challenge to the revocation of a medical degree), *aff'd*, 966 F.2d 125 (3d Cir.1992), the tests may overlap, and one or more prongs of one test may be irreconcilably inconsistent with the prong of another. *See Community Med. Center v. Emergency Med. Services*, 712 F.2d 878, 879–81 (3d Cir.1983). In the final analysis, the test to be applied depends upon the circumstances of the case and the Supreme Court has counseled lower courts to investigate carefully the facts of each case. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961); *Community Med. Center v. Emergency Med. Services*, 712 F.2d 878, 880 (3d Cir.1983) (citations and footnotes omitted).

Under none of the tests, or combinations thereof, can it be said that the ABIM is a state actor and that its conduct constituted state action. *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The ABIM is a private, nonprofit charitable corporation with no ties to any governmental entity. It is neither licensed nor regulated by any governmental body and it does not receive any governmental subsidy or aids. Therefore, "the action of the [Defendants] may [not] be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786 (rejecting claim that actions of private nursing homes which discharged or transferred patients were state actions even though the state subsidized the cost of medical expenses of the patients and licensed facilities). Neither has Plaintiff shown that the state had exercised "coercive power nor has provided significant encouragement" to the ABIM. In fact, contrary to Plaintiff's factual allegations, neither the Pennsylvania[9] nor the New York[10] statutory medical licensing

**8.** The Third Circuit Court of Appeals has rejected the argument that the symbiotic relationship test developed in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), was overruled by the close nexus test developed in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). *See Braden v. University of Pittsburgh*, 552 F.2d 948, 957 (1977).

**9.** Requirements for licensure in Pennsylvania are provided in the Pennsylvania Medical Practices Act of 1985. 63 Pa. Cons.Stat.Ann. § 422.1 *et seq.* (1968 & Supp.1992). Board certification is not a prerequisite for licensing. *See* 63 Pa. Cons.Stat.Ann. § 422.22 (1968 & Supp.1992). Section 422.5 prohibits the Pennsylvania State Board of Medicine from delegating "any of its final decision making responsibilities to a consultant or panel of consultants." 63 Pa. Cons. Stat.Ann. § 422.5 (1968 & Supp.1992).

**10.** The New York physician licensure requirements include: (1) filing an application with the state department of education; (2) receiving either a medical doctor (M.D.) degree, a doctor of osteopathy (D.O.) degree or equivalent degree in accordance with the state commissioner's regulations; (3) having experience satisfactory to the New York State Board of Medicine ("NYSBM") and in accordance with the state commissioner's regulations; (4) passing an examination satisfactory to the NYSBM and in accordance with the state commissioner's regulations; (5) reaching the age of twenty-one; (6) satisfying the citizenship or immigration status; (7) being of good moral character; and (8) paying appropri-

scheme delegates to the ABIM the power to license physicians in general or to provide a comprehensive scheme for board certification. Nor is certification in any specialty or subspecialty a prerequisite to the practice of medicine in either state. *See Burton v. Wilmington Parking Garage*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961) (state has not "insinuated itself" into a position of interdependence with the acting party). Finally, Plaintiff has not demonstrated that the challenged conduct impinges upon powers that are "traditionally the exclusive prerogative of the State[.]" *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974) (other citations omitted). In arguing that the ABIM performs a "public or quasi public function," Plaintiff confuses the process of "licensure"—the state controlled method of authorizing and regulating the practice of a profession or vocation which involves the establishment of minimum state mandated standards (licensure requirement), with that of "board certification"—the vesting of peer recognition based on high professional achievement, (Norcini Aff. ¶ 3). While the state traditionally has regulated the former, Plaintiff has not shown that the states of New York or Pennsylvania traditionally have played any role in the latter. *See, e.g., Anderson v. Louisiana Dental Ass'n*, 372 F.Supp. 837, 842 (M.D.La.), *aff'd*, 502 F.2d 783 (5th Cir.1974) (no state action in claim against professional association since practice of dentistry was not contingent upon membership in association).

■ Neither is the preparation and administration of a test upon which state institutions may rely for academic decisions nor is the use of state facilities for administering the test sufficient to convert private conduct into state action. In *Johnson v. Educational Testing Service*, 754 F.2d 20 (1st Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985), plaintiff alleged that Educational Testing Service ("ETS") was a state actor because it administered the Law School Admissions Test

("LSAT") and a high score on the LSAT is considered a prerequisite to admission to nearly all law schools, including state schools. The court rejected this contention, finding that ETS "merely reports test scores and lacks authority to decide who shall be admitted and who shall be rejected." *Id.* at 24–25 ("the formulation, grading, and reporting of standardized test is not an exclusive public function"). Similarly, in *Langston v. ACT*, 890 F.2d 380, (11th Cir.1989), the court rejected plaintiff's argument that ACT, a private agency which administers a multiple choice college entrance exam that is required for admission to many colleges, by administering, advertising, recording results and grading scores at state facilities, had become a state actor for purpose of a section 1983 analysis. *Id.* at 385 (state institutions' reliance on validity of test results insufficient to convert private action into state action).

Because ABIM is a private, non-profit unregulated entity which receives no state funds and which has not been delegated by the state any role in the licensing or regulation of professional conduct, and whose role only involves the preparation, administration, and grading of a test which, *inter alia*, is used by peers to determine recognition of high professional achievement (board certification), it is not a state actor and its conduct does not constitute state action for purposes of imposing liability under section 1983.

2. *Judgment Against Plaintiff Will be Entered on Count II Alleging a Violation of 42 U.S.C. § 1985(3).*

■ 42 U.S.C. § 1985(3) provides a right of action to persons injured by a conspiracy which deprived "[the] person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *United Broth. of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 827, 103 S.Ct. 3352, 3355, 77 L.Ed.2d 1049 (1983). To state a cause of action under section 1985(3) a complaint must allege four elements: (1) a conspiracy; (2) "for the purpose of depriving, either direct-

ate fees. N.Y.Educ.Law § 6524 (McKinney 1985 & Supp.1991).

ly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[;]" (3) that the conspirators committed some act in furtherance of the conspiracy; and (4) that the Plaintiff was either "injured in his person or property" or was "deprived of having and exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1799, 29 L.Ed.2d 338 (1971); *see also Bethel v. Jendoco Const. Corp.,* 570 F.2d 1168, 1172–73 (3d Cir.1978).

Plaintiff alleges that Defendants Kimball and Norcini, individually and on behalf of the ABIM, deprived him of "the equal protection, privileges and [benefits] of the law." (Complaint ¶¶ 6, 32(a), 39(b)). This allegation is insufficient to state a cause of action under section 1985(3). Firstly, the complaint failed to allege the requisite element that Defendants acted under color of law. In cases alleging violation of due process and equal protection under the Fourteenth Amendment, state action must be shown. *See generally Lugar v. Edmonson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (conduct allegedly causing deprivation of federal right must be fairly attributable to the state). Secondly, the allegations are general and vague and do not satisfy the standard for factual specificity required under section 1985(3). *See Everett v. City of Chester,* 391 F.Supp. 26, 29 (E.D.Pa.1975); *Accord, Armstrong v. School District of Philadelphia,* 597 F.Supp. 1309, 1313 (E.D.Pa.1984) (civil rights plaintiffs and required to plead highly specific facts in support of conspiracy allegations). To establish a conspiracy, a complaint under section 1985(3) is required to contain at least minimum factual support of the existence of a conspiracy. *Robinson v. McCorkle,* 462 F.2d 111, 113 (3d Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Shah v. MetPath Corp.,* 470 F.Supp. 158, 161 (E.D.Pa.1979). None has been provided by Plaintiff. Leave to amend will not be granted, however, because the complaint fails to state a cause of action in a more fundamental way.

Plaintiff alleges generally a conspiracy by and among two or more agents of ABIM with ABIM itself. (Complaint ¶ 32). "[A] section 1985(3) conspiracy between a corporation and one of its officers may be maintained if the officer is acting in a personal, as opposed to an official, capacity, or if independent third parties are alleged to have joined the conspiracy." *Robinson v. Canterbury Village, Inc.,* 848 F.2d 424, 431 (3d Cir.1988) (citing *Johnston v. Baker,* 445 F.2d 424, 427 (3d Cir.1971)).

In support of the Motion for Summary Judgment, Defendants have produced evidence that Defendant Kimball was President of ABIM but that he "ha[d] no role [at all] in preparing or scoring any certification examination for the subspecialty of endocrinology and metabolism" (Norcini Aff. ¶ 24), and that Defendant Norcini was the Vice President for Evaluation and Research and that his role was to serve as staff support to the eight member ABIM subspecialty board of endocrinology and metabolism which develops the subspecialty examination. (Norcini Aff. ¶ 11). It is clear from Defendants' proofs that Defendants Kimball and Norcini were acting, if at all, in an official capacity with respect to the wrongdoings alleged by Plaintiff. To defeat a summary judgment motion, Plaintiff must do more than "reassert factually unsupported allegations contained in its pleadings," *Williams v. Borough of West Chester,* 891 F.2d at 460, and, instead, must offer facts which "contradict facts specifically averred by the movant[.]" *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). The Plaintiff again chose to proffer no evidence to meet Defendants' proofs. Therefore, because of the absence of "specific facts showing that there is a *genuine issue for trial*[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original), as to whether the individual defendants were acting in a personal capacity (as opposed to an official one), summary judgment will be granted on this count.

**360**

### 3. *Judgment Against Plaintiff Will be Entered on Count IV Alleging a Violation of 42 U.S.C. § 1986.*

Section 1986 provides a cause of action against persons who have knowledge of violations of section 1985, have the power to prevent or aid in preventing such violations, and neglect or refuse to do so. 42 U.S.C. § 1986.

No claim can be maintained under section 1986 unless a cause of action has been established under section 1985. *Rogin v. Bensalem Township,* 616 F.2d 680, 696 (3d Cir.1980) ("transgressions of § 1986 by definition depend on a pre-existing violation of § 1985"), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

Because Plaintiff's cause of action under section 1985(3) fails, Plaintiff's section 1986 claim must fail as well.

### IV. *Conclusion*

The motion for summary judgment is granted and judgment will be entered against Plaintiff and in favor of Defendants on Count III because the ABIM is not a state actor and the alleged discriminatory conduct does not constitute state action; on Count II for failure by Plaintiff to show the existence of a genuine issue of material fact as to whether the individual defendants were acting in other than an official capacity; on Count IV because a section 1986 cause of action depends on the validity of a Section 1985 claim which claim has not survived Defendants' summary judgment motion; and on Count I which contains general allegations and does not purport to state a cause of action.